IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BURLINGTON INSURANCE COMPANY, | No. C 12-03372 SI |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| TERRANCE J. ALAN, et al., | |
| Defendants. | |

Now before the Court is plaintiff Burlington Insurance Company's motion for partial summary judgment. Defendants Terrance J. Alan and Scottsdale Insurance Company have each filed oppositions, to which Burlington has replied.[1] On April 19, 2013, the Court held a hearing on the motion. Having considered the parties' arguments, and for the reasons set forth below, the Court hereby GRANTS plaintiff's motion.

**BACKGROUND**

This case stems from an incident on June 27, 2009, during which Harris Fulbright was shot to death following a "skirmish among patrons" outside The Pink Diamonds, an adult entertainment nightclub in San Francisco, California. First Amen. Compl. ("FAC") ¶ 14. Fulbright's surviving spouse, Delashon Monique Green, and their three children, filed an action for wrongful death in San Francisco Superior Court against D.H.S. Global Investments, LLC, dba The Pink Diamonds, and Terrance J. Alan. *See* FAC, Ex. B; Request for Judicial Notice ("RJN") ¶ 1, Ex. 1, *Delashon Monique*

---

[1] Defendants Delashon Monique Green, Sariyah Fulbright, Ana'staja Fulbright, and Te'janaey Scott have not opposed Burlington's motion. Defendants DHS and Club Paree, LLC, have defaulted in the coverage action, and "judgment against them will be sought in a separate motion for default judgment." Motion (Dkt. 65), at 4.

*Green, et al. v. D.H.S. Global Investments, LLC, et al.*, Case No. CGC-11-512028 ("*Green* complaint" or "*Green* action").[2]

### 1.     The State Court *Green* Action

The state court wrongful death complaint alleges that Alan, the owner of the building where The Pink Diamonds operated its business, *see* RJN, Ex. 1, ¶ 7, "negligently owned, maintained, managed, controlled, and operated [The Pink Diamonds] . . . so as to fail to protect Harris Fulbright from injury from criminal acts of third persons . . . and failed to provide and maintain adequate security measures to avoid injury to persons and patrons of [The Pink Diamonds] . . . ." *Id.* at ¶ 12. It further alleges that "[a]s a proximate result of Defendants' negligence, Harris Fulbright received physical injuries which resulted in conscious pain, suffering and death." *Id.* at ¶ 13.

In support of its motion, Burlington has offered San Francisco Police Officer Miguel Torres's declaration, which was part of a separate state court action,[3] describing the events that gave rise to the *Green* action. *Id.* at Ex. 3.[4] Officer Torres stated:

> On June 27, 2009 at 3:02 a.m., a San Francisco police officer in a marked vehicle heard several shots in the area of Jones and Eddy Streets. As officers approached the location, an unknown witness told them, "Someone got shot down at the Pink Diamonds." Upon arrival at 220 Jones Street, several unknown witnesses pointed towards the Pink Diamond and told officers that several people were shot. Officers [exited] their car and went to assist a victim who appeared to be in a state of shock and had extreme difficulty breathing. Officers observed blood coming from the victim's chest and sternum. An ambulance were [sic] dispatched to the scene while the officers [performed] CPR on the victim to aid him in staying conscience [sic] until medics arrived . . . The ambulance upon arrival found that the first victim was not breathing and not responsive, and medics pronounced him dead at approximately 3:13 a.m. . . . A security guard at Pink Diamond

---

[2] The Court hereby takes judicial notice of the *Green* Action, which is a matter of public record. *See* Fed. R. Evid. 201.

[3] *City and County of San Francisco et al. v. Smith et al.*, San Francisco Superior Court Case No. 09-484-055. There, the City and County of San Francisco successfully enjoined DHS, Club Paree, The Pink Diamonds, and certain other individuals, from operating the establishment.

[4] Burlington requests that the Court take judicial notice of Officer Torres's sworn declaration offered in support of plaintiffs in the *Green* action. *See* Fed. R. Evid. 201. Accordingly, the Court hereby takes judicial notice of the declaration as a fact not subject to reasonable dispute or as a matter or public record.

> stated he was standing in front of the building and heard an argument between two black males, and later heart [sic] gun shots. Another security guard confirmed the argument took place in front of the Club, then later heard the gun shots nearby. A third victim later admitted himself to Highland Hospital in Oakland with a gun shot wound to his left ankle. The third victim stated that the first victim got into a verbal argument with the suspect which later escalated to gun shots being fired.

RJN, Ex. 3, ¶ 14.

### 2. The Burlington Insurance Policy

Burlington insured Club Paree, LLC, a "Gentlemen's Club located at 220 Jones Street, San Francisco, California." *See* FAC, Ex. A; Witte Decl. ¶ 2, Ex. A, Certified Policy 160B002986 ("Policy"). Club Paree, LLC, shares the same address as The Pink Diamonds adult entertainment nightclub implicated in the *Green* action. *See Green* Compl. ¶ 5 (listing the address of The Pink Diamonds at 220 Jones Street, San Francisco, California). Burlington agreed to participate in Alan's legal defense in the *Green* action subject to a complete reservation of its rights, including the right to seek a declaration of no coverage and reimbursement of all sums incurred by Burlington in the defense of Alan. Witte Decl. ¶ 3, Ex. B, at 2, 7.

The Policy contains an endorsement entitled "**EXCLUSION – ASSAULT, BATTERY OR OTHER PHYSICAL ALTERCATION**" ("Assault or Battery Exclusion") *Id.* The exclusion provides, in relevant part:

> This insurance policy does not apply to [¶] 'bodily injury':
> . . . .
>
> (2) Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.
>
> (3) Arising in whole or in part out of any attempt by any person to avoid, prevent, suppress, or halt any actual or threatened "assault" or "battery."
>
> (4) Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or attempted by any person, or any attempt by any person to avoid, prevent, suppress or halt any actual or threatened verbal or physical confrontation or altercation.
> . . . .
>
> This exclusion . . . applies to all acts or omissions and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all

3

> theories of negligence, gross negligence, recklessness or intentional tort . . . .
>
> "Battery" means wrongful physical contact with a person without his or her consent that entails some injury or offensive touching.

Witte Decl. ¶ 2, Ex. A (Part II of II), at 3 (identified in the policy at BG-G-042 11 06).

### 3. **The Federal Coverage Action**

On June 28, 2012, Burlington filed suit in this Court ("coverage action") against all parties in the *Green* action – Alan, DHS, Club Paree, LLC, and the spouse and children of the decedent Fulbright, Delashon Monique Green, Sariyah Fulbright, Ana'staja Fulbright, and Te'janaey Scott. After the Court granted leave to amend the complaint (Dkt. 60), Burlington added Scottsdale Insurance Company ("Scottsdale") as a defendant. FAC (Dkt. 62) ¶¶ 28-29. Burlington alleges that Scottsdale insured Alan under a separate insurance policy in effect at the time of the alleged shooting. The coverage action now seeks: (1) reimbursement from Alan; (2) declaratory judgment that Burlington has no duty to defend Alan, DHS, and Club Paree, LLC, in the *Green* action; (3) declaratory judgment that Burlington has no duty to indemnify any of the defendants; (4) equitable contribution from Scottsdale; and (5) declaratory judgment that Scottsdale owes a duty to defend and indemnify Alan in the *Green* action. Burlington now moves for summary judgment only as to the first three claims.

### **LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so

4

that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

Burlington seeks summary judgment on its claims for (1) reimbursement from Alan, (2) declaratory judgment that Burlington has no duty to defend Alan, DHS, and Club Paree, LLC, in the *Green* action, and (3) declaratory judgment that Burlington has no duty to indemnify any of the defendants. The parties do not dispute that the resolution of each claim necessarily turns on whether the incident giving rise to the underlying *Green* action is covered by the Burlington insurance policy.

**1.     Plain Reading of the Language of the Assault or Battery Exclusion.**

Burlington contends that where there is no possibility of coverage for events alleged against the insured, then there is no duty to defend, and accordingly, no duty to indemnify. Burlington argues that the Assault or Battery Exclusion in the insurance policy is unambiguous and worded broadly to exclude from coverage all bodily injury "[a]rising in whole or in part out of any" assault or battery. From the plain language of the insurance policy, Burlington reasons that because the crux of the *Green* action

1 arises "in whole or in part" from an incident in which Harris Fulbright "was shot during a skirmish
2 among patrons" – a battery – the Assault or Battery Exclusion to the insurance policy applies, and
3 therefore Burlington has no duty to defend or indemnify the defendants in the *Green* action. The Court
4 agrees.

Under California law, "[i]t has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to a potential for coverage under the insuring agreement." *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 19 (1995). Thus, "when a suit against an insured alleges a claim that potentially could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to undisputed facts, that the claim cannot be covered." *Palp, Inc. v. Williamsburg Nat'l Ins. Co.*, 200 Cal.App.4th 282, 288 (2011) (emphasis omitted). But where there is no possibility of coverage, there is no duty to defend. *Id*. While insurance contracts have special features, "they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Sup. Ct.*, 2 Cal.4th 1254, 1264 (1992).

Although as a general rule, exclusionary clauses in insurance contracts are interpreted narrowly against the insurer, *see Arenson v. Nat'l Automobile & Cas. Ins. Co.*, 45 Cal.2d 81, 83 (1995), the Assault or Battery Exclusion is broadly worded to exclude from coverage all bodily injury "[a]rising in whole or in part out of any 'assault' or 'battery' committed or attempted by any person." RJN ¶ 2, Ex A, at 3. Indeed, the term "arising out of" in an exclusion provision of an insurance policy has been interpreted by California courts to be "a broad concept requiring only a 'slight connection' or an 'incidental relationship' between the injury and the excluded risk." *See Southgate Recreation & Park Dist. v. California Ass'n for Park & Recreation Ins.*, 106 Cal.App.4th 293, 301 (2003). California courts have "generally equated 'arising out of' with 'origination, growth or flow from the event.'" *Id.*

Here, the very basis for the *Green* wrongful death action, supported by Officer Torres's declaration, was that Harris Fulbright was shot and killed – a battery, as defined by the insurance policy,

6

*see* Witte Decl. ¶ 2, Ex. A – by an individual following a skirmish among patrons outside of The Pink Diamonds nightclub. *See* RJN ¶ 1, Ex. 1 (*Green* complaint); *Id.* at ¶ 3, Ex. 3 (Torres Decl.). Defendants do not dispute Officer Torres's version of the facts, nor do they dispute that those facts are the entirety of relevant facts to be considered here. Indeed, the *Green* complaint itself, which Alan relies on in his opposition, confirms Officer Torres's version of events to the extent that it alleges that Fulbright was shot and killed as a result of defendants' negligent maintenance of security.

Accordingly, the Court concludes that the *Green* action arose "in whole or in part" out of a battery, and that therefore the plain language of the Assault or Battery Exclusion prohibits coverage for the incident giving rise to the wrongful death action. As such, there is no potential for coverage of the wrongful death claim, and Burlington therefore has no duty to defend or indemnify Alan in the underlying *Green* action.[5] Moreover, "California law clearly allows insurers to be reimbursed for attorney's fees' and other expenses paid in defending insureds against claims for which there was no obligation to defend." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 660-61 (2005). Thus, Burlington is entitled to, and may seek through separate motion, reimbursement for all sums reasonably paid or incurred in the defense of Alan in the *Green* action.

## 2. Concurrent Cause Doctrine.

Defendants urge that "coverage exists despite application of the Assault and Battery Exclusion because it is alleged that at least two joint causes resulted in the shooting death of the decedent." Alan Opp'n, at 4. Defendants contend that under California law, coverage exists where multiple risks constitute concurrent proximate causes even if one of the causes is a non-covered risk. *Id.* Thus, defendants argue that while the shooting may constitute an excluded assault or battery, Alan's failure to provide security measures "jointly yet independently, caused the shooting death of Harris Fulbright," thereby creating a duty for Burlington to defend and indemnify Alan. *Id.*

---

[5] "Because the duty to defend is broader than the duty to indemnify, a conclusion that [the insurer] did not have a duty to defend will be dispositive of [a] claim that [the insurer] had a duty to indemnify." *Delgado v. Interinsurance Exch. of Auto. Club*, 47 Cal.4th 302, 308 n. 1 (2009).

7

The California Supreme Court has said that "when two . . . risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy." *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal.3d 94, 102 (1973). The concurrent cause doctrine avoids narrowly restricting coverage only to "*the* 'prime,' 'moving,' or 'efficient,' cause of the accident." *Id.* at 104 (emphasis in original). Instead, it broadly extends "coverage under a liability insurance policy . . . to an insured whenever an insured risk constitutes simply *a* concurrent proximate cause of the injuries. That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act." *Id.* at 104-05 (emphasis in original).

The concurrent cause doctrine does, however, have one limitation: the covered and excluded causes must be independent of each other. *See id.* at 97-100. *Partridge* established that in determining independence for purposes of the concurrent cause doctrine, courts look to whether one of the concurrent causes can be said to have caused the other concurrent cause, and visa versa, notwithstanding the fact that both concurrent tortious acts can be said to have jointly caused the underlying injury. *See id.* at 104 n. 10. That is, if the tortious acts themselves are causally related, they are not independent. Even if latter act is independent of the former, the former must also be independent of the latter in order to qualify as independent. *See, e.g.*, *Partridge*, 10 Cal.3d at 104 (noting that one negligent act did not cause the other negligent act, "nor visa versa").

In *Partridge*, the primary case on which defendants rely, a negligently modified hunting gun accidently fired during negligent off-road driving, injuring a passenger. *Id.* at 98. The court held that the homeowner's insurance policy covered the accident because it covered the negligent gun modification, even though the policy excluded coverage for negligent driving. *Id.* at 97. The court noted, "both causes were independent of each other: the filing of the [gun's] trigger did not 'cause' the careless driving, nor visa versa. Both, however, caused the injury. In traditional tort jargon, both are concurrent proximate causes of the accident, the negligent driving constituting an intervening, but non-superseding, cause of the accident." *Id.* at 104 n.10.

*Partridge* is readily distinguishable from the facts in this case. Here, unlike in *Partridge*, it cannot be said that the two alleged tortious acts giving rise to the decedent's death – (1) the negligent failure to provide security, and (2) the shooting itself – constitute independent concurrent causes. In *Partridge*, while both alleged negligent acts together caused the injury, neither negligent act was the catalyst for the other. Here, however, on the facts as alleged in the *Green* Action, the shooting death of the decedent was caused at least in part by Alan's negligence in failing to maintain proper security.[6] Therefore, the two causes are not independent.

Defendants also rely on *Rack N Cue Billiards, Inc. v. The Burlington Insurance Co.*, 2013 WL 360014 (Cal. Ct. App. Jan. 30, 2013), an unpublished decision with little persuasive value. Nevertheless, defendants' reliance on this case is misplaced. *Rack N Cue* involves facts more closely akin to those in *Partridge,* and readily distinguishable from those presented here. In *Rack N Cue*, the plaintiff was injured when one pool hall patron shoved another patron into the plaintiff, causing the plaintiff to crash through a negligently maintained plate glass window. *Id.* at *2. The plaintiff alleged multiple causes of his injury, including the pool hall's negligent maintenance of the window, as well as the brawl itself – an assault and battery. *Id.* at *2-3. The defendant, who had an insurance policy with an assault or battery exclusion similar to the one here, argued that the two tortious acts constituted independent causes for the plaintiff's injury, thereby creating a duty on the part of the insurance company to defend an indemnify the defendant. The court agreed, finding that "the insurer failed to show through undisputed facts that Rack N Cue's alleged negligent failure to replace the window was not an independent concurrent cause of plaintiff's injury." *Id.* at *9-10. It noted that the pool hall fight "'did not 'cause' the defective window, nor visa versa." *Id.* at *9 (internal quotations omitted). "[T]he fight did not contribute to th[e] alleged act of negligence [in the maintenance of the window]. And

---

[6] Because defendants allege that Fulbright's death arose from the negligent maintenance of security, the two negligent acts – security and a third party shooting – cannot logically be independent. If, as defendants argue by way of a hypothetical, "a thief [] injured or killed the decedent during a robbery outside the premises," Alan Opp'n, at 7, there would be no liability for Alan *unless* that thief's actions were enabled by the negligent provision of security. Thus, even the hypothetical stabbing could not be said to be independent.

nothing in the negligence suit suggests Rack N Cue's failure to replace the window somehow triggered the fight. The plaintiff's complaint can be reasonably read to allege the negligently maintained premises just happened to be the location where the fight broke out." *Id.*

Here, the facts alleged in the complaint, and supported by Officer Torres's declaration, suggest unequivocally that Harris Fulbright was shot and killed outside of The Pink Diamonds nightclub. *See* RJN ¶ 1, Ex. 1 (*Green* complaint). Even if the Court were to agree with defendants that Alan contributed to the decedent's death by failing to maintain adequate security, this negligence "contributed" to, and indeed "triggered," the shooting that killed Harris Fulbright. It cannot be said, as the court in *Rack N Cue* reasoned, that the negligently maintained security just happened to be at the same location as where the shooting occurred. *Cf. Rack N Cue*, 2013 WL 360014, at * 9.

Accordingly, because the two tortious acts alleged here are not independent, the Court concludes that the concurrent cause doctrine does not apply.[7]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Burlington's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: April 30 , 2013

SUSAN ILLSTON
United States District Judge

---

[7] Defendant Scottsdale's request to vacate or defer ruling on Burlington's partial summary judgment is DENIED. Scottsdale contends that it needs more time to respond to Burlington's first amended complaint. However, Scottsdale has had sufficient notice of this lawsuit and over three weeks to evaluate its position in opposing the motion. *See* Dkt. 60, at 4.